UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**No JS6**

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:24-cv-06312-RGK-MAR | Date | November 20, 2025 |
| Title | ***Judy Griffin et al. v. City of Los Angeles*** | | |

| | | |
|---|---|---|
| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | |
| Joseph Remigio | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| | |
|---|---|
| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
| Not Present | Not Present |

**Proceedings:** **(IN CHAMBERS) ORDER RE: COURT TRIAL; JUDGMENT**

## I. INTRODUCTION

On July 26, 2024, Judy Griffin, Olivia Almalel, Communities Actively Living Independent and Free ("CALIF"), and R.S., by and through her guardian ad litem, Matthew Struski (collectively, "Plaintiffs") filed a class action Complaint for declaratory and injunctive relief against the City of Los Angeles ("Defendant"). (ECF No. 1.) Plaintiffs allege Defendant systemically failed to ensure its newly constructed and renovated public parks and park facilities are readily accessible to persons with mobility disabilities, and assert that Defendant's allegedly deficient policies, procedures, and practices violated Title II of the Americans with Disabilities Act of 1990 ("ADA"); Section 504 of the Rehabilitation Act of 1973 ("Section 504"); and the California Disabled Persons Action, California Government Code § 11135 ("Section 11135").

On February 13, 2025, the Court certified a class for this action consisting of "all persons with mobility disabilities, including those who use wheel chairs, scooters, canes or other mobility aids, who use or desire to use the City of Los Angeles' public parks and park facilities." (ECF No. 63.)

On October 14, 2025, the case proceeded to a bench trial, concluding on October 16, 2025. Following the presentation of Plaintiffs' case, Defendant made an oral motion for judgment pursuant to Federal Rule of Civil Procedure ("Rule") 52(c). The Court informed Defendant that the motion would be considered upon written submission. On October 20, 2025, Defendant filed a Motion for Judgement on Partial Findings or, Alternatively, for Partial Judgment as to Plaintiffs Griffin and CALIF, Pursuant to Rule 52(c). (ECF No. 173.) On November 13, 2025, the Court issued partial findings of fact and conclusions of law pursuant to Rule 52(c) based on Plaintiffs' case-in-chief at trial and denied Defendant's request for partial judgment ("Partial Post-Trial Order"). (ECF No. 178.)

Now, after carefully reviewing and considering the evidence and arguments of counsel presented throughout the bench trial, the Court **ENTERS JUDGMENT** for Plaintiffs for the following reasons.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:24-cv-06312-RGK-MAR | Date | November 20, 2025 |
| Title | ***Judy Griffin et al. v. City of Los Angeles*** | | |

## II. FINDINGS OF FACT[1]

In the Partial Post-Trial Order, the Court issued numerous findings of fact as to the evidence presented during Plaintiffs' case-in-chief at trial. (*See* ECF No. 178.) The Court adopts and incorporates by reference those findings of fact into this Order. The Court proceeds to issue the following findings of fact based on Defendant's presentation of its defense at trial concerning (1) Defendant's relevant departmental structure and policies; (2) Defendant's grievance systems; and (3) Defendant's transition plan.

### A. Relevant Departmental Structure and Policies

As noted in the Partial Post-Trial Order, Defendant has a Department on Disability ("DOD"). The DOD is tasked with ensuring that all of Defendant's services, activities, and facilities are accessible and inclusive for people with disabilities. The DOD provides its services to both constituents and other city departments, like Defendant's Department of Recreation and Parks ("RAP").

As for new construction or alterations of Defendant's facilities, including its parks and park facilities, the DOD does not provide training to Defendant's personnel about the federal or state accessibility standards that should be applied for designing, reviewing plans of, construction, or conducting final inspections of Defendant's facilities. The DOD is only involved in designing and constructing Defendant's facilities upon request.

The DOD's website includes Defendant's policy on accessibility, which states that "[i]n accordance with the requirements of Title II of the Americans with Disabilities Act ('ADA'), the City of Los Angeles will not discriminate against qualified individuals with disabilities on the basis of disability in its services, programs, or activities." (Accessibility Statement, Def. Ex. 3000.) Stephen David Simon, the DOD's Executive Director and General Manager, testified that Defendant's departments are responsible for implementing the accessibility policy in their spheres of work. Cathie Santo Domingo, RAP's Assistant General Manager, confirmed that RAP is obligated to follow this policy.

Santo Domingo oversees planning, construction, and maintenance. On February 27, 2014, Santo Domingo issued a memorandum to RAP staff entitled, "Tracking All ADA-Related Improvements From July 2013 To The Present And For All Future Projects." (Defs. Ex. 3237.) In this memorandum, Santo Domino provided instructions for conducting an assessment to track all ADA-related work within RAP.

Jose Diaz, a licensed architect and the acting head of the RAP architecture group, testified that the head of the architectural group is responsible for overseeing park project delivery from inception, design, and through contract administration. For the design plans, the architectural group has quality

[1] This opinion serves as the findings of fact and conclusions of law required by Federal Rule of Civil Procedure ("Rule") 52. Fed. R. Civ. P. 52. Any finding of fact that constitutes a conclusion of law is adopted as such, and vice-versa.

control reviews of design plans with aims to ensure accessibility features, like paths of travel, are sufficiently addressed in the plans. As the head of the group, Diaz stamps and signs off on RAP design plans on behalf of the architecture group, certifying that the plans comply with local city, state, and federal accessibility standards. Although the architect of record does not specifically certify on the design plans that they comply with the 2010 ADA Accessibility Standards, the architect of record is still responsible for ensuring the plans do in fact comply.

During contract administration, RAP architects partner with contractors during construction to the end of the project. During this construction period, architects will regularly conduct site visits, at which point they can and have, identified construction that deviated from the design plan. Diaz testified that if the deviation was compliant with accessibility standards, the deviation could be approved. However, if the deviation violated accessibility standards, correction was required.

**B. <u>Grievance Systems</u>**

As previously outlined in the Partial Post-Trial Order and further confirmed by Defendant's presentation of evidence at trial, Defendant is made aware of accessibility issues at its parks through various grievance systems, including the DOD's online grievance form, calls to the DOD, reports from Defendant's staff onsite, public complaints voiced at Defendant's meetings, and communications from Defendant's employees who advise RAP. In Defendant's presentation of its defense, Defendant presented further evidence specifically on (1) Defendant's online ADA grievance form, (2) Defendant's general complaint system, and (3) reports from Defendant's staff onsite.

1. *<u>Defendant's ADA Grievance Form</u>*

Defendant's online ADA grievance form is provided according to its ADA Grievance Policy and Procedure, which are both posted on the DOD's website. RAP's website has a clickable link that takes visitors directly to the ADA Grievance Policy and Procedure page on the DOD's website. Defendant's ADA Grievance Policy and Procedure includes four steps, as outlined on the DOD's website:

1. The public is asked to submit requests as soon as possible after discovering ADA violations. The ADA grievance form is available on the DOD's website for the public to personally fill out and submit. For constituents who contact the DOD outside the formal online grievance form, they are asked whether they would like to file a grievance form. If the constituent agrees, the DOD staff will complete the grievance form on the constituent's behalf.

2. The DOD's Disability Access and Services Division ("DASD") will review completed grievances within fifteen working days of receipt. If it appears that a complete investigation and determination cannot be completed within that timeframe, a Notice of Continuing

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-06312-RGK-MAR | Date | November 20, 2025 |
|---|---|---|---|
| Title | ***Judy Griffin et al. v. City of Los Angeles*** | | |

Investigation ("NCI") will be mailed to the grievant within fifteen working days. DASD staff will then discuss the accessibility complaint with the concerned departments.

3. Within ninety days of the date the NCI was sent, or at the conclusion of the grievance resolution process (whichever comes first), DASD staff will send the grievant and the concerned departments a notice of outcome along with a description of the appeals process, should the grievant wish to appeal.

4. If Defendant's response does not satisfactorily resolve the matter, the grievant or an authorized representative may appeal the notice of outcome.

Defendant's ADA Grievance Policy and Procedure is not posted on any signage in Defendant's parks or park facilities.

2. *General Complaint System*

Defendant has a telephone line and website (311 and MyLA311, respectively) that connect the public to non-emergency government services, like Defendant's accessibility complaint system. The public can lodge accessibility complaints by calling 311 or going to the MyLA311 website, and those complaints will be routed to the relevant departments, like the DOD and RAP.

3. *Staff Reporting*

All parks and park facilities have some level of fulltime or parttime maintenance staff. These maintenance staff are the day-to-day observers of onsite park and facility issues. Staff are expected to flag issues within a few hours of discovery.

Santo Domingo testified that she has also received direct emails from the public and Defendant's staff regarding accessibility issues in Defendant's parks. RAP maintains a project tracking system to keep track of lodged complaints. The RAP maintenance group also has an inventory tracker to track conditions and maintenance service histories of the parks' water fountains and restrooms.

Once RAP is notified of an accessibility issue, RAP's Construction and Maintenance team assesses the issue. If the Construction and Maintenance team can address the issue, like fixing cracks in a pathway or posting accessibility signage, the team will typically start to work on resolving it within a few days of complaint receipt. If the accessibility issue requires work beyond basic maintenance and repair, the team will route it to the appropriate RAP personnel.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:24-cv-06312-RGK-MAR | Date | November 20, 2025 |
| Title | ***Judy Griffin et al. v. City of Los Angeles*** | | |

### C. <u>Transition Plan</u>

The ADA and Section 504 require Defendant to perform a self-evaluation survey and develop a transition plan to bring Defendant's programs, services, and activities into compliance with federal disability laws. *See* 28 C.F.R. § 35.150. In 2000, Defendant finalized, implemented, and submitted to the federal government a transition plan. The 2000 transition plan included remediation of barriers in fifty parks.

In 2012, recognizing that Defendant's facilities have been remodeled and departments reorganized since the 2000 transition plan, then-Mayor Antonio R. Villaraigosea stated in an Executive Directive that "[a] new transition plan [wa]s needed." (Executive Directive No. 26, Def. Ex. 3001.) Since then, DOD has been responsible for preparing an updated city-wide self-evaluation survey, including surveying RAP's parks and park facilities. This self-evaluation plan looks for all barriers that may exist and catalogs them. The self-evaluation survey does not distinguish between existing and newly constructed facilities. As of this trial, Defendant was implementing the self-evaluation plan, having evaluated approximately 660 sites city-wide with approximately 200 sites outstanding. The DOD anticipated the self-evaluation would be complete by June 30, 2026.

After the self-evaluation plan is complete and the accessibility barriers are identified, Defendant will develop a transition plan to remediate those barriers. Defendant's various departments are responsible for drafting their own transition plan for the barriers identified in their spheres of work, and the DOD will provide technical assistance.

Once the transition plan is drafted, Defendant will implement the plan. As with drafting the transition plan, each department will be responsible for remediating the barriers in their space with support as needed from other departments. Defendant's witnesses testified that the transition plan will likely be a twenty-to-thirty-year process. Defendant does not have a hard deadline for completion of the transition plan.

Brenda Aguirre, RAP's Assistant General Manager, is the designated ADA transition plan coordinator for her department. Since approximately 2023, RAP has been working on the self-evaluation phase of the transition plan. Once the self-evaluation process is done, RAP's Construction and Maintenance team will help develop and implement the transition plan for RAP.

As for the existing accessibility barriers identified in this case, Santo Domingo testified that Defendant is awaiting the outcome of the self-evaluation plan before putting together the transition plan to address all identified accessibility barriers. As of trial, the accessibility barriers identified in this case remained.

## III. CONCLUSIONS OF LAW

In the Partial Post-Trial Order, the Court issued numerous conclusions of law as to the evidence and arguments presented in Plaintiffs' case-in-chief. (*See* ECF No. 178.) The Court finds that Defendant's presentation of its defense did not impact the Court's conclusions of law that Plaintiffs established standing under Article III and that Defendant violated the ADA, Section 504, and Section 11135, evident in the actionable accessibility barriers that existed in Defendant's parks and park facilities. (*See id.*) Thus, the Court adopts and incorporates by reference those conclusions of laws into this Order.

Having found ADA, Section 504, and Section 11135 violations with respect to multiple parks and park facilities, the next question to the Court is whether class-wide injunctive relief is warranted. As discussed in further detail in the Partial Post-Trial Order, Plaintiffs seek system-wide injunctive relief regarding five purported defects or omissions in Defendant's policies and practices. In its defense at trial, Defendant argued that Plaintiffs failed to meet this system-wide burden of proof.

In its Partial Post-Trial Order, the Court concluded that Plaintiffs did *not* meet their burden of establishing that system-wide relief is warranted in response to the following alleged defects: (1) Defendant has no written policy requiring newly constructed and altered park facilities to comply with the ADA and CBC; (2) Defendant has no written policy requiring there to be an accessible path of travel to altered park facilities; and (3) Defendant's close-out procedures lack a comprehensive disability access inspection. (ECF No. 178 at 11–14.) The findings of fact from Defendant's presentation at trial outlined above further support these conclusions of law, which are thus adopted and incorporated by reference into this Order.

The Court previously found that Plaintiffs met their burden that some system-wide relief is warranted in relation to the following alleged defects: (1) Defendant's policies and practices do not require prompt barrier removal from newly constructed and altered facilities; and (2) Defendant lacks a proactive policy or practice of regularly assessing accessible features to ensure they follow accessibility federal and state standards. (ECF No. 178 at 13–14.) The Court addresses each of these defects in turn.

### A. Policies and Practices Requiring Prompt Barrier Removal

As concluded in the Partial Post-Trial Order, the CBC and ADA require that unauthorized deviations from accessibility standards be rectified. *See* 42 U.S.C. § 12182; Cal. Gov't Code § 4452 (requiring barriers deviating from accessibility requirements to be removed within 90 days of discovery of the violation). While California law requires resolution of violations within 90 days of discovery, the Court is unaware of a similar ADA requirement. In their presentation of the case, Plaintiffs introduced evidence that indicated that some of the actionable barriers were apparent, had existed for likely longer than 90 days, and were encountered by certain Plaintiffs and their experts on separate visits, even after

the complaint was filed notifying Defendant of these barriers. (*See* ECF No. 178 at 4–7.) Thus, there was evidence Defendant discovered the ADA and CBC violations, at least by way of this action, and should have fixed them at least by the California-required deadline.

At trial, Defendant presented evidence that it would address complaints concerning park and park facility conditions within a few days of receipt of the grievance, either by sending a construction team to repair the maintenance issue or routing the complaint to other teams who can handle more complex issues. Defendant also presented evidence that the DOD's grievance procedure set out specific policies as to when ADA grievances would be addressed, which include timing estimates for investigation and grievance resolution. Thus, Defendant's policies do have requirements for removing accessibility barriers identified in grievances. No evidence was introduced that Defendant has a practice of *not* addressing a lodged grievance.

However, the accessibility barriers identified in this case still appear to remain. Defendant's witness testified that RAP was waiting to address these barriers until its ongoing self-evaluation of barriers is completed and the transition plan is developed. Notably, Defendant's witnesses testified that this transition process is anticipated to be a twenty-to-thirty-year process, but there is no set deadline. As the Ninth Circuit has held, courts should not assume that defendants will "move toward full compliance," as circumstances may change and these known access barriers could potentially not be addressed. *See Pierce v. Cnty. of Orange*, 526 F.3d 1190, 1223 (9th Cir. 2008).

Therefore, there seems to be a disconnect between Defendant's policies regarding barrier removal in response to lodged complaints and Defendant's practice of removing barriers discovered outside of the grievance process. Although Defendant appears to have a comprehensive plan to identify and remediate barriers across its facilities city-wide, Defendant is still required by California law to resolve state accessibility standard violations within 90 days of discovery. Thus, the continued existence of accessibility barriers in this case appears to be attributable to Defendant lacking policies or practices that require a removal deadline for all barriers, not just those discovered through official grievance processes. Accordingly, some system-wide relief is warranted.

### B. Policy or Practice of Assessing Accessibility Features

As concluded in the Partial Post-Trial Order, the Court found no basis to conclude Defendant's reactive approach to maintaining accessibility features, which relies on reports and complaints about issues from various grievance sources, is facially deficient. (ECF No. 178 at 14.) For example, Plaintiffs failed to introduce any evidence that Defendant received complaints but failed to act on them. However, the Court did find that Plaintiffs sufficiently demonstrated that the grievance procedure that triggers Defendant's reactive maintenance practice is deficiently publicized, resulting in ongoing accessibility violations. (*Id.*)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:24-cv-06312-RGK-MAR | Date | November 20, 2025 |
| Title | ***Judy Griffin et al. v. City of Los Angeles*** | | |

Defendant's presentation of its defense only supports, rather than rebuts, this conclusion of law. Defendant's witnesses confirmed that the DOD's ADA grievance procedure is not posted on signs in Defendant's parks or park facilities. Although the grievance procedure is posted and linked to on at least three of Defendant's websites and can be accessed by calling 311, there is no in person signage informing park visitors on how to access these sources or otherwise lodge complaints concerning accessibility barriers. While some park visitors may have the know-how and ability to access this online or telephonic information, others do not. Thus, the Court again concludes that the grievance procedure triggering Defendant's reactive maintenance approach is deficiently publicized, and warrants some system-wide relief.

Accordingly, the Court finds that some system-wide relief would be appropriate to address the policy and practice deficiencies that attributed to the accessibility barriers causing Plaintiffs and class members' injuries.

## IV. CONCLUSION

For the foregoing reasons, the Court **ENTERS JUDGMENT** for Plaintiffs. The parties **SHALL** meet and confer and file a joint proposed form of injunction to the Court **within 45 days of the date of this Order**.

**IT IS SO ORDERED.**

:

Initials of Preparer JRE/gz